# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

IRA DIZENGOFF and BETSY DIZENGOFF,

        Petitioners,

   v.

HINE BUILDERS, LLC

        Respondent.

Civil Action No.

## MOTION TO VACATE OR MODIFY ARBITRATION AWARD

BERCHEM MOSES PC

Richard J. Buturla (#ct05967)
75 Broad Street
Milford, CT 06460
(203) 783-1200
(203) 878-4912 (fax)
rbuturla@berchemmoses.com

AKIN GUMP STRAUSS HAUER & FELD LLP

Abid Qureshi (*pro hac vice* admission pending)
One Bryant Park
New York, NY 10036
(212) 872-1000
(212) 872-1002 (fax)

*Attorneys for Petitioners Ira and Betsy Dizengoff*

June 5, 2018

# TABLE OF CONTENTS

Page

JURISDICTION ...................................................................................................1

PRELIMINARY STATEMENT..............................................................................1

STATEMENT OF RELEVANT FACTS AND PROCEEDINGS...................................3

I.      THE CONTRACT ......................................................................................3

II.     THE ARBITRATION .................................................................................6

III.    THE DISPUTES RELEVANT TO THIS MOTION........................................8
        A.      Applications for Payment Dispute ................................................9
        B.      The Contract Termination Dispute ..............................................12

ARGUMENT ......................................................................................................16

I.      THE AWARD SHOULD BE VACATED AS EXCEEDING THE
        ARBITRATOR'S POWER IN MANIFEST DISREGARD OF THE LAW .....16
        A.      The Arbitrator, in Manifest Disregard of the Law, Ignored Longstanding
                Precedent that a Party Must Prove Its Own Damages ...........................18
        B.      The Arbitrator Ignored Established Precedent that a Party Is Not Obligated
                to Continue Performing under a Contract Once the Other Party Repudiates ........24

II.     THE ARBITRATION WAS FUNDAMENTALLY UNFAIR BECAUSE THE
        ARBITRATOR EFFECTIVELY EXCLUDED THE DIZENGOFFS' EVIDENCE.........27

III.    THE ARBITRATOR ERRED IN AWARDING HINE BUILDERS ATTORNEY'S
        FEES WITHOUT AFFORDING THE DIZENGOFFS THE OPPORTUNITY TO
        OBJECT TO UNREASONABLE FEES ........................................................31
        A.      The History of the Legal Fees Dispute .................................................31
        B.      The Arbitrator Erred by Not Allowing the Dizengoffs the Opportunity to
                Review Unredacted Legal Bills ........................................................33

CONCLUSION....................................................................................................35

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aecon Bldgs., Inc. v. Zurich North America,*
  2008 WL 2434205 (W.D. Wash June 13, 2008)...................................................34

*Ambrogio v. Beaver Rd. Assocs.,*
  836 A.2d 1183 (Conn. 2003) .........................................................................22, 23

*Andy's Oil Serv., Inc. v. Hobbs,*
  9 A.3d 433 (Conn. App. Ct. 2010)........................................................................24

*Bell Aerospace Co. v. Local 516, Int'l Union, UAW,*
  500 F.2d 921 (2d Cir. 1974)..................................................................................28

*Capo v. Bowers,*
  2001 WL 36193449 (S.D.N.Y. Mar. 12, 2001) ...................................................17

*Carrano v. Yale-New Haven Hosp.,*
  904 A.2d 149 (Conn. 2006) ............................................................................19, 20

*Cofinco, Inc. v. Bakrie & Bros., N.V.,*
  395 F. Supp. 613 (S.D.N.Y. 1975) .......................................................................28

*Coppola Constr. Co. v. Hoffman Enters. Ltd. P'ship,*
  117 A.3d 876 (Conn. App. Ct. 2015).............................................................24, 25

*Cottman Transmission Sys., Inc. v. Hocap Corp.,*
  803 A.2d 402 (Conn. App. Ct. 2002).....................................................................24

*DiRussa v. Dean Witter Reynolds Inc.,*
  121 F.3d 818 (2d Cir. 1997)..................................................................................17

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,*
  333 F.3d 383 (2d Cir. 2003)......................................................................17, 18, 20

*Equitable Prod. Co. v. Elk Run Coal Co., Inc.,*
  2008 WL 5263735 (S.D. W. Va. Oct. 3, 2008) ....................................................34

*Essex Builders Grp., Inc. v. Amerisure Ins. Co.,*
  2007 WL 700851 (M.D. Fla. Mar. 1, 2007) .........................................................34

*Fisher v. United States,*
  96 S. Ct. 1569 (1976)............................................................................................33

*Frillici v. Westport*,
    823 A.2d 1172 (Conn. 2003) ............................................................................................19

*Gilman v. Pedersen*,
    438 A.2d 780 (Conn. 1981) ..............................................................................................25

*Halligan* v. *Piper Jaffray, Inc.*,
    148 F.3d 197 (2d Cir. 1998).............................................................................................18

*Hornbeck Offshore Servs., LLC v. Salazar*,
    2011 WL 2214765 (E. D. La. June 1, 2011).....................................................................34

*Hoteles Condado Beach v. Union de Tronquistas Local 901*,
    763 F.2d 34 (1st Cir. 1985)...............................................................................................28

*Ideal Elec. Sec. Co. v. Int'l Fidelity Ins. Co.*,
    129 F. 3d 143 (D.C. Cir. 1997).....................................................................................33, 34

*Jock* v. *Sterling Jewelers, Inc.*,
    143 F. Supp. 3d 127 (S.D.N.Y. 2015), *vacated on other grounds*, 2017 WL
    3127243 (2d Cir. Jul. 24, 2017).....................................................................................16, 17

*Konkar Maritime Enters., SA v. Compagnie Belge D'Affretement*,
    668 F. Supp. 267 (S.D.N.Y. 1987) ...................................................................................24

*McKenna v. Woods*,
    574 A.2d 836 (Conn. App. Ct. 1990)................................................................................25

*Nationwide Payment Solutions, LLC v. Plunkett*,
    831 F. Supp. 2d 337 (D. Me. 2011) .............................................................................33, 34

*PHE Inc. v. Dep't of Justice*,
    983 F.2d 248 (D. D.C. 1993) ............................................................................................33

*Pillsbury Winthrop Shaw Pittman LLP v. Brown Sims, PC*,
    2010 WL 56045 (S.D. Tex. Jan. 6, 2010).........................................................................34

*Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC*,
    497 F.3d 133 (2d Cir. 2007).............................................................................................17

*Powell v. Spot-On Networks, LLC*,
    2006 WL 860108 (D. Conn. Mar. 31, 2006) ...............................................................24, 25

*Premco Drilling Inc. v. Maillet Bros. Builders, Inc.*,
    218 A.2d 542 (Conn. Cir. Ct. 1965) .................................................................................19

*Pullman, Comley, Bradley & Reeves v. Tuck-it-away, Bridgeport, Inc.*,
    611 A.2d 435 (Conn. App. Ct. 1992)................................................................................25

*Sperry Int'l Trade, Inc.* v. *Gov't of Isr.*,
    689 F.2d 301 (2d Cir. 1982)................................................................................................16

*Stanton v. N. Y. & E. Ry. Co.*,
    22 A. 300 (Conn. 1890) ......................................................................................................19

*State v. Cascone*,
    487 A.2d 186 (Conn. 1985) ................................................................................................33

*Sullivan v. Thorndike*,
    934 A.2d 827 (Conn. App. Ct. 2007)..................................................................................19

*T.Co Metals, LLC* v. *Dempsey Pipe & Supply, Inc.*,
    592 F.3d 329 (2d Cir. 2010)...............................................................................................17

*Teamsters, Chauffers, & Helpers, Local Union No. 506 v. E.D. Clapp Corp.*,
    551 F. Supp. 570 (N.D.N.Y. 1982).....................................................................................28

*Tempo Shain Corp. v. Bertek, Inc.*,
    120 F.3d 16 (2d. Cir. 1997)................................................................................................28

*Tolland Enters. v. Scan-Code, Inc.*,
    684 A.2d 1150 (Conn. 1996) ..............................................................................................25

*Ullmann v. State*,
    647 A. 2d 324 (Conn. 1994) ...............................................................................................33

*VS Int'l SA v. Boyden World Corp.*,
    862 F. Supp. 1188 (S.D.N.Y. 1994)....................................................................................19

*Wasniewski v. Grzelak-Johannsen*,
    549 F. Supp. 2d 965 (N. D. Ohio 2008)..............................................................................34

*Wells v. Dicesare-Bentley Eng'rs, Inc.*,
    2000 WL 1434047 (Conn. Super. Ct. Sept. 15, 2000)........................................................23

*Westerbeke Corp.* v. *Daihatsu Motor Co., Ltd.*,
    304 F.3d 200 (2d Cir. 2002).........................................................................................17, 18

*Whitaker v. Amato*,
    1998 WL 150753 (Conn. Super. Ct. Feb. 24, 1998)...........................................................19

*Willemijn Houdstermaatschappij v. Standard Microsystems Corp.*,
    103 F. 3d 9 (2d Cir. 1997)..................................................................................................25

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*,
    946 F.2d 1003 (2d Cir. 1991).............................................................................................25

## Statutes

5 Bruner & O'Connor Construction Law § 18:23 ........................................................25

Restatement (Second) of Contracts § 250 ...............................................................26

Restatement (Second) of Contracts § 253 (1981) ......................................................25

3 Restatement (Second) of Contracts § 346 (1981) ...................................................19

9 U.S.C. § 10(a)(3).........................................................................................1, 3, 27, 28

9 U.S.C. § 10(a)(4).............................................................................................1, 3, 16

9 U.S.C. § 11(b)........................................................................................................1, 3

28 U.S.C. § 1332(a)(1)....................................................................................................1

Pursuant to the Federal Arbitration Act ("FAA") §§ 10(a)(4) and 11(b), petitioners Ira and Betsy Dizengoff (the "Dizengoffs" or "Petitioners"), by and through their attorneys Akin Gump Strauss Hauer & Feld LLP, respectfully submit this motion (the "Motion") to vacate or modify the award issued by arbitrator Dennis C. Cavanaugh (the "Arbitrator") in an arbitration administered by the American Arbitration Association ("AAA") (Case No. 02-16-0001-7335) (the "Award"),[1] which is attached hereto.[2]

## JURISDICTION

Ira and Betsy Dizengoff are individuals who reside in New York, New York and are citizens of New York. Upon information and belief, Hine Builders, LLC ("Hine Builders" or "Respondent") is a limited liability company formed under the laws of Connecticut and has one member, Timothy M. Hine, who is a citizen of Connecticut.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of New York and a citizen of Connecticut, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## PRELIMINARY STATEMENT

The Dizengoffs are well aware of the rigorous standards that govern challenges to an arbitration award in this judicial circuit. The Award, however, is so egregious that it merits reconsideration and, ultimately, vacatur or substantial modification. Indeed, the Award

---

[1] The Arbitrator issued his Partial Findings Award on April 27, 2018 that included his findings on the parties' claims and damages, but did not include an award for attorney's fees. After requesting that Respondent submit attorney invoices in support of its affidavit, the Arbitrator then issued his Final Award on June 4, 2018 that included an award for Respondent's attorney's fees. Both the Partial Findings Award and Final Award collectively will be referred to in this Motion as the "Award."

[2] Affidavit of Abid Qureshi Ex. A (Award). All exhibits cited herein are attached to the Affidavit of Abid Qureshi in Support of Petitioners' Motion to Vacate or Modify Arbitration Award ("Qureshi Aff.").

contravenes the basic tenets of established law and ignores unrefuted evidence, resulting in a fundamentally unfair award.

Underlying the Arbitrator's flawed reasoning is a complete disregard for the applicable burden of proof. Specifically, in this dispute involving homeowners (the Dizengoffs) and a general contractor (Respondent), Respondent asserted counterclaims that included damages for monies allegedly owed by the Dizengoffs to certain subcontractors. In defending against these counterclaims, the Dizengoffs submitted *uncontroverted evidence* at the arbitration hearing that all subcontractors had been paid in full. Respondent's witness and principal, Tim Hine, by contrast, testified that he could present "no evidence" that the subcontractors have not received full payment. There can be no dispute that the burden of proof fell on Respondent with respect to its counterclaims, nor that Respondent failed to satisfy this burden when it presented nothing at all to contest the Dizengoffs' clear and compelling evidence.

Under any application of the burden of proof, Respondent's counterclaim should have been denied on this basis alone. Instead, following the submission of post-hearing briefs, the Arbitrator took the extraordinary step of reopening the record to require the Dizengoffs, who did not have the burden, to provide additional evidence that the subcontractors had been paid. Specifically, the Dizengoffs submitted an affidavit, which was consistent with sworn testimony at the arbitration hearing that all the subcontractors had been paid. Respondent, ignoring its clear burden, submitted no evidence that it paid the subcontractors, and thus needed to be reimbursed, or that any subcontractors remained unpaid. Instead, Respondent simply refuted—without support—certain of the Dizengoffs' representations for the stated reason that the Dizengoffs failed to offer proof of payment. Remarkably, the Arbitrator reversed the burden of proof and accepted that only the subcontractor payments to which Respondent unilaterally

2

stipulated were paid by the Dizengoffs, while ignoring evidence provided by the Dizengoffs that all subcontractors had been paid. This conclusion defies both logic and the law; and if the Award is not set aside, it would result in an unconscionable windfall for Respondent.

Equally inexplicable is the Arbitrator's failure to address one of the Dizengoffs' central legal arguments. Specifically, the Dizengoffs argued at length in their briefs that Respondent's repudiation of the contract discharged the Dizengoffs from any remaining duties under the contract. Rather than address and reject this argument and the evidence supporting it, however, the Award simply makes no mention of it whatsoever.

Such manifest disregard of the law and the evidence is precisely the type of extraordinary circumstance that merits vacatur or substantial modification of an arbitration award. Accordingly, the Dizengoffs respectfully request an order under 9 U.S.C. § 10(a)(4) vacating the Award as exceeding the Arbitrator's power. Alternatively, the Dizengoffs request that the Award be modified under 9 U.S.C. § 11(b) to adjust the damages award to an amount that is both reasonable under the law and supported by the evidence presented.

## STATEMENT OF RELEVANT FACTS AND PROCEEDINGS

### I. THE CONTRACT

The Dizengoffs hired Hine Builders, and its principal, Tim Hine, as the general contractor to build their home in Connecticut (the "Project"). The contract that governed this Project[3] provided that construction of the Project would commence on or about November 13, 2014 and required Respondent to complete construction by April 1, 2016.[4] The Contract's payment terms

---

[3] The form of agreement between the parties consisted of a modified AIA document A103-2007 edition Standard Form of Agreement Between Owner and Contractor, *see* Qureshi Aff. Ex. B (AIA 103 identified as Ex. 171 at the Hearing), and a modified AIA document A201-2007 edition, General Conditions of the Contract for Construction, *see* Qureshi Aff. Ex. C (AIA 201 identified as Ex. 172 at the Hearing), (collectively, the "Contract").

[4] Qureshi Aff. Ex. B (AIA 103 § 4.3).

comprised a so-called "cost plus" arrangement entitling Hine Builders to the cost of work plus a 16% commission referred to as the builder's fee.[5]

The Contract specified which fees were to be reimbursed by the Dizengoffs and which fees were not. The fees most commonly sought for reimbursement were the fees paid or owed to subcontractors and the supervisory fees charged by Respondent for its employees' work on the Project. Fees for the wages and salaries of Respondent's personnel were reimbursable, but only to the extent such work occurred at the Project site and with the Dizengoffs' approval.[6] The Contract also expressly prohibited Respondent from seeking payment for certain items, including the liability insurance policy that Respondent was required to purchase and carry.[7]

Consistent with these requirements, Respondent would regularly submit applications for payment of fees (each an "Application for Payment" or "Application"). Each Application was submitted on a standard form that showed each item of work that was to be done to complete the Project. Respondent was then required to detail the work allegedly performed during the Application time period (usually about one month) and the costs associated with the work completed. In theory, the Applications were thus supposed to show simply and succinctly (i) the estimated cost to complete the entire Project, (ii) the actual cost incurred during the relevant time period, and (iii) the cost remaining to complete the Project. By submitting the Applications, Respondent certified that the work set forth in the Application was actually completed in accordance with the Contract and, thus, that Hine Builders' requested supervisory fees were appropriate.

---

[5] Qureshi Aff. Ex. B (AIA 103 § 5.1.1).

[6] Qureshi Aff. Ex. B (AIA 103 § 7.2.2).

[7] Qureshi Aff. Ex. C (AIA 201 §§ 11.1.1, 11.1.5).

4

Before the Dizengoffs were required to pay any fees requested in an Application, the Project architect, Sadler Architects, LLC, through its principal, Lisa Sadler (the "Architect"), was tasked with reviewing the Applications. Based on her knowledge of the work performed on the Project during the relevant time period, the Architect was empowered under the Contract to modify the amount the Dizengoffs were required to pay on each Application.[8] Only after the Architect certified payment were the Dizengoffs required to pay Hine Builders the amount certified.[9] Notably, the Architect routinely modified the amount Respondent sought in each Application for a number of reasons, including, among other things, that (i) the work for which Hine Builders sought payment was not complete, (ii) the Application contained accounting errors, and (iii) Hine Builders overcharged the Dizengoffs for supervisory fees or general condition fees (i.e., those expenses that did not fit within any specific line item in the Application).

The Architect was also charged under the Contract with serving as the Initial Decision Maker.[10] The Initial Decision Maker was obligated, among other things, to certify that a valid reason existed to terminate the Contract if either party chose to do so.[11] Additionally, the Contract permitted either party to assert a claim "seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract."[12] All claims (except for certain exclusions not relevant to the parties' arbitration) were to be referred to the Initial Decision Maker for initial decision.[13] In evaluating claims, the Initial Decision Maker was allowed to

---

[8] Qureshi Aff. Ex. C (AIA 201 §§ 4.2.5, 9.6.1).

[9] Qureshi Aff. Ex. C (AIA 201 § 9.6.1).

[10] Qureshi Aff. Ex. C (AIA 201 § 15.2.1).

[11] Qureshi Aff. Ex. C (AIA 201 § 1.1.8).

[12] Qureshi Aff. Ex. C (AIA 201 § 15.1.1).

[13] Qureshi Aff. Ex. C (AIA 201 § 15.2.1).

"consult with or seek information from either party."[14] After receiving any information necessary to make the initial decision, the Initial Decision Maker was obligated either to reject or approve the claim in whole or in part.[15] Any initial decision was to be "final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution."[16]

The Contract established the circumstances under which it could be terminated and that Respondent could stop work, along with the procedures to be followed in each instance. The Contract also contained detailed dispute resolution procedures.[17] Importantly, the Contract expressly precluded Hine Builders from stopping work unless "the Architect *unreasonably* delay[ed] issuing a Certificate of Payment."[18]

## II.    THE ARBITRATION

After serving a demand for arbitration, on February 28, 2017, the Dizengoffs submitted a claim to the AAA, seeking damages for Hine Builders' breaches and repudiation of the Contract (the "Arbitration"), and the Arbitrator was assigned to oversee the dispute.[19] On March 13, 2017, Hine Builders answered the Dizengoffs' claim and filed a counterclaim, asserting that the Dizengoffs had breached the Contract.[20]

The parties submitted pre-hearing briefs to the Arbitrator on November 20, 2017. A hearing was held on December 5-7, 2017 and January 18-19, 2018 (the "Hearing"). During the Hearing, five witnesses testified—Ira and Betsy Dizengoff, Lisa Sadler (the Architect), Tim Hine

---

[14] Qureshi Aff. Ex. C (AIA 201 § 15.2.3).

[15] Qureshi Aff. Ex. C (AIA 201 § 15.2.4).

[16] Qureshi Aff. Ex. C (AIA 201 § 15.2.5).

[17] Qureshi Aff. Ex. C (AIA 201 §§ 9.5.1, 9.4.2).

[18] Qureshi Aff. Ex. C (AIA 201 § 9.7) (emphasis added); *see also* Qureshi Aff. Ex. D (Dizengoffs' Post-Hr'g Br. at 3).

[19] Qureshi Aff. Ex. I (Dizengoffs' Statement of Claims identified as Ex. 244 at the Hearing).

[20] Qureshi Aff. Ex. J (Hine Builders' Response & Counterclaim identified as Ex. 245 at the Hearing).

6

of Hine Builders, and Larry Lyons, an employee of Hine Builders who was the Project supervisor. After the Hearing concluded, the parties submitted post-hearing briefing, including replies and attorney affidavits in support of attorney's fees, which were submitted on March 22, 2018. The Arbitrator then closed the case.

On March 29, 2018, the Arbitrator re-opened the case and requested that the Dizengoffs compile evidence of payments made to subcontractors for whom Hine Builders had sought payment in Applications 12 and 13.[21] In response to the Dizengoffs' submission, Respondent submitted a chart "stipulating" to certain payments the Dizengoffs made to subcontractors, and rejecting others for failure of the Dizengoffs to provide evidence of such payments. Despite the burden of proof lying squarely with Respondent on its counterclaims, the Arbitrator accepted Respondent's submission in the Partial Findings Award that included an order for Claimants to submit any response or opposition to the Respondent's Affidavit for attorney's fees. On May 4, 2018, the Dizengoffs submitted their Objection to Respondent's Affidavit in Support of Attorney's Fees, to which Respondent responded and the Dizengoffs replied. On May 11, 2018, after reviewing the parties' submissions, the Arbitrator requested "more detailed itemization of the attorney fee billings from counsel for the Respondent."[22] Upon a renewed request made by the Dizengoffs, on May 18, 2018, the Arbitrator ordered Respondent to submit redacted versions of Respondent's legal bills to the Dizengoffs by May 23, 2018.[23] On June 1, 2018, after Respondent twice submitted a set of completely redacted legal bills, the Dizengoffs submitted their supplemental objection to Respondent's Request for Attorney's Fees, objecting to the fact that Respondent still had not submitted properly redacted legal bills and to the extent the

---

[21] Qureshi Aff. Ex. K (Email from Arbitrator Reopening Case).

[22] Qureshi Aff. Ex. X (Email from Arbitrator requesting attorney invoices from Respondent).

[23] Qureshi Aff. Ex. Y (Email from Arbitrator requiring Respondent to provide attorney invoices to Arbitrator and Petitioners).

Dizengoffs could discern what the fees related to given that the bills were redacted in their entirety, that the fees were unreasonable.[24] Thereafter, on June 4, 2018, the Arbitrator issued his Final Award which included an award of attorney's fees, and this Motion followed.

## III.    THE DISPUTES RELEVANT TO THIS MOTION

As noted by the Arbitrator, there was a breakdown in the parties' relationship early on in the Project.[25] Just a few months into the 18-month Project, Tim Hine stopped attending weekly on-site meetings, failed to timely respond to communications from the Dizengoffs and the Architect, and rarely provided supervisory services at the Project site (yet still sought payment for such services).[26] As a result of this conduct, among other things, beginning in the summer of 2015, the Architect properly declined to certify payment of certain supervisory fees that Hine Builders charged for time Mr. Hine was allegedly spending on the Project.

As relevant to this Motion, the breakdown in the relationship between the Dizengoffs and Tim Hine ultimately culminated in (i) Hine Builders issuing a stop work notice in violation of the terms of the Contract, for the stated reason that it had not received payment on account of supervisory fees that had been denied by the Architect in her capacity as the Initial Decision Maker, (ii) the Architect finding that there existed "cause" for the Dizengoffs to terminate Hine Builders pursuant to the Contract, and (iii) the Dizengoffs subsequently issuing an immediate notice of termination. The Dizengoffs then commenced the Arbitration, asserting claims against Hine Builders for breach of contract, fraudulent and negligent misrepresentation, and violations of the Connecticut Unfair Trade Practices Act. Hine Builders responded, asserting its own counterclaims for breach of contract and damages for amounts the Dizengoffs allegedly owed on

---

[24] Qureshi Aff. Ex. Z (Dizengoffs' Supplemental Objection to Respondent's Request for Attorney's Fees).

[25] Qureshi Aff. Ex. A (Award at 4).

[26] Qureshi Aff. Ex. E (Tr. 73:24-74:19) (Dec. 5, 2017); Qureshi Aff. Ex. F (Tr. 40:6-41:22) (Dec. 7, 2017).

the final two Applications for Payment (12 and 13), as well as expectation damages on the grounds that the Dizengoffs wrongfully terminated the Contract. Though the Arbitrator's denial of the Dizengoffs' affirmative claims is flawed in numerous material respects, this Motion is limited to the following two issues, both concerning the Arbitrator's manifest disregard of the law and the evidence presented in his decision to award damages to Hine Builders based on its two counterclaims: (1) the Arbitrator incorrectly awarded Hine Builders payment for amounts allegedly owed pursuant to the final two Applications for Payment despite the fact that Hine Builders did not submit *any* evidence supporting its claim that it owed money to the subcontractors; (2) the Arbitrator incorrectly awarded expectation damages to Respondent despite the fact that Respondent failed to submit evidence of such damages; and (3) the Arbitrator, in finding that the Dizengoffs wrongfully terminated the Contract, simply ignored the law, submissions and argument from the Dizengoffs that Hine Builders had repudiated the Contract almost a week before the Dizengoffs sent their letter agreeing to Hine Builders' suggestion to terminate.

## A. Applications for Payment Dispute

Beginning with Application for Payment 8, the Architect properly stopped certifying for payment all fees associated with supervisory services allegedly performed by Mr. Hine because, among other things, Mr. Hine had not shown that he actually was providing services on the Project that reasonably added to the progress of the Project. For the same reasons, the Architect declined to certify payment of Mr. Hine's supervisory fees requested in Applications 9, 11, and 12.[27]

---

[27] Application for Payment 10 did not seek reimbursement for any supervisory fees, and the Architect never certified for payment Application for Payment 13. *See* Qureshi Aff. Ex. A (Award at 14) ("I find that the Project Architect possessed the contractual authority to withhold certificate of payment as to Contractor billings for supervisory and administrative personnel labor costs.").

Hine Builders submitted its Application for Payment 12 on or around December 31, 2015.[28] In this application, Respondent included the unpaid supervisory fees the Architect had already rejected from Applications 8, 9, and 11. After Hine Builders submitted Application 12, the Architect reviewed it and formally declined to certify the full amount for payment, as she was authorized to do under the Contract. Specifically, the Architect denied payment for, among other things: (i) supervisory fees Hine Builders intentionally overcharged; (ii) certain work not completed; and (iii) other work not approved by the Dizengoffs.[29] Thereafter, the Architect emailed Hine Builders, outlining her reasons for denying the supervisory fees requested in Application for Payment 12 and explaining that she would happily certify the full amount of supervisory fees if Hine Builders provided additional evidence to support the work Mr. Hine had contributed to the Project in accordance with the terms of the Contract.[30] Respondent provided no such evidence.

Hine Builders submitted its Application for Payment 13 on or around January 21, 2016, the day after Hine Builders improperly terminated the Contract and abandoned the job site. Because the Contract was terminated, the Architect never certified Application 13 for payment, instead providing comments on the Application. She explained that Hine Builders, again, submitted an Application that was not supported by the work actually completed on the Project.

In its counterclaim, Hine Builders asserted that the Dizengoffs failed to pay Applications for Payment 12 and 13.[31] As part of its claim, Hine Builders requested payment of the full

---

[28] Qureshi Aff. Ex. R (Application for Payment 12 identified as Ex. 226 at the Hearing).

[29] Hine Builders did not submit Application for Payment 13 until after it breached the Contract and abandoned the Project, and therefore, the application was outside the Contract and the Architect was under no obligation to review it.

[30] The Architect did not certify for payment the portion of Application 12 that she found was supported by the work actually completed on the Project until January 21, 2016, the day after Hine Builders improperly terminated the Contract and abandoned the job site.

[31] Qureshi Aff. Ex. J (Hine Builders' Response & Counterclaim at 19-21).

amount of Applications 12 and 13, including past amounts for uncertified supervisory fees, supervisory fees allegedly provided during the time periods relevant to Applications 12 and 13, and payments it allegedly owed or had paid to subcontractors. Although the Dizengoffs had not submitted payment for work by subcontractors to *Hine Builders* for those Applications for Payment, the Dizengoffs directly paid in full all the subcontractors who had performed work on the Project up until January 20, 2016.[32] Accordingly, as the subcontractors were reimbursed directly by the Dizengoffs, Hine Builders was not owed any money for fees associated with reimbursing the subcontractors. Hine Builders presented no evidence to support its argument that the subcontractors were not paid or were still owed money, despite the Dizengoffs' repeated representations to the Arbitrator that it was Hine Builders' burden to establish its own damages.

On January 15, 2016, Hine Builders notified the Architect that it intended to stop work on the Project on January 22, 2016 (the "Stop Work Notice"), stating that Hine Builders would stop working "until payment of all invoiced Supervisory Fees owed have been received."[33] The Stop Work Notice was sent by Hine Builders after the Architect's justified rejection of certain of Mr. Hine's claims for supervisory fees in Applications 8, 9, and 11.1.[34]

When the Arbitrator re-opened the case, he requested that the Dizengoffs compile evidence of payments made to subcontractors for whom Hine Builders had sought payment in Applications for Payment 12 and 13[35]—in other words, evidence to *disprove* Hine Builders' unsubstantiated damages. The Dizengoffs, having already raised the burden of proof issue during the Hearing, reasserted that it was Hine Builders' burden to prove its damages (i.e., it had to show that the subcontractors were not paid and therefore it was owed those amounts so that it

---

[32] Qureshi Aff. Ex. F (Tr. 253:1-8) (Dec. 7, 2017); Qureshi Aff. Ex. N (Tr. 570:19-25) (Jan. 19, 2018).

[33] Qureshi Aff. Ex. G (Stop Work Notice identified as Ex. 49 at the Hearing).

[34] Qureshi Aff. Ex. U (Letter from Architect identified as Ex. 213 at the Hearing).

[35] Qureshi Aff. Ex. K (Email from Arbitrator Reopening Case).

11

*could pay the subcontractors*) but, in the spirit of cooperation and respect for the Arbitrator, agreed to provide the requested documents.[36] After the Dizengoffs submitted to Respondent documentation evidencing that it had paid in full all subcontractors that had actually performed work represented in Applications 12 and 13, Respondent submitted a spreadsheet in which it purported to "stipulate" to certain of these payments, and reject others for the stated reason of failure to provide evidence.[37] In his Award, the Arbitrator accepted Respondent's stipulation as fact, despite Respondent bearing the burden of proof and having submitted no evidence whatsoever, either during or subsequent to the Hearing, in support of its counterclaim.[38] In total, the Arbitrator ordered the Dizengoffs to pay Hine Builders $52,025.86 purportedly owed to subcontractors in Applications 12 and 13.[39]

### B. The Contract Termination Dispute

The Contract prescribed an explicit process for how Respondent was to seek payment for its work and how the parties were to address any payment disputes. The Architect, as the Initial Decision Maker, was responsible for reviewing the Applications for Payment and certifying that the amount Hine Builders requested in each Application for Payment was commensurate with the work completed on the Project during the specified time period. Moreover, the Contract provided that in the event of a payment dispute, Respondent was obligated to continue work on the Project. Respondent ignored this contractual requirement and, in doing so, breached and repudiated the Contract.

---

[36] Qureshi Aff. Ex. L (Dizengoffs' Email to Arbitrator attaching Proof of Pmt).

[37] Qureshi Aff. Ex. M (Hine Builders' Email to Arbitrator with Stipulation).

[38] Qureshi Aff. Ex. A (Award).

[39] Qureshi Aff. Ex. A (Award at 18).

Upset that the Architect would not certify payment of Mr. Hine's supervisory fees in Application 12, Hine Builders filed a claim with the Architect.[40] The Dizengoffs responded to this claim.[41] The Architect then made an initial decision on Hine Builders' claim, affirming her original decision to not certify payment for Mr. Hine's supervisory fees because he failed to show that he had provided these services while stationed at the Project.[42]

The Contract permits Hine Builders to stop work only if "the Architect unreasonably delay[ed] issuing a Certificate of Payment."[43] The Architect did not "unreasonably delay" any payment, but rather withheld certification because she was unable to conclude after "evaluation of the Work . . . [that] the Work had progressed to the point indicated and that the quality of the Work [was] in accordance with the Contract."[44] Under the Contract, in the event of a disagreement with the Architect's initial determination, Hine Builders was not allowed to submit a stop work notice, but rather was obligated to seek mediation and Hine Builders was required to continue work pending resolution of any issues.[45] Specifically, the Contract states that "[i]f the Contractor disputes any determination by the Architect with regard to any Certificate of Payment, *the Contractor nevertheless shall expeditiously continue to prosecute the work . . . .*"[46] In other words, even if Respondent disputed the Architect's refusal to certify payment for Applications 12 and 13, Hine Builders was contractually obligated to continue to work on the Project.

---

[40] Qureshi Aff. Ex. V (Hine's Claim identified as Exhibit 210 at the Hearing).

[41] Qureshi Aff. Ex. W (Dizengoffs' Response re Claim identified as Exhibit 212 at the Hearing).

[42] Qureshi Aff. Ex. U (Letter from Architect).

[43] Qureshi Aff. Ex. C (AIA 201 § 9.7).

[44] Qureshi Aff. Ex. C (AIA 201 §§ 9.5.1, 9.4.2) ; *see also* Qureshi Aff. Ex. A (Award at 15) ("[T]here is evidence here permitting a finding that the Respondent did not properly complete several items of work… ").

[45] Qureshi Aff. Ex. C (AIA 201 § 9.5.4 ["If the Contractor disputes any determination by the Architect with regard to any Certificate of Payment, the Contractor nevertheless shall expeditiously continue to prosecute the Work."]); *id.* at §§ 15.2.1, 15.2.6.1.

[46] Qureshi Aff. Ex. C (AIA 201 § 9.5.4) (emphasis added).

13

Rather than comply with the terms of the Contract, however, on January 15, 2016, Hine Builders sent the Dizengoffs a notice that it intended to stop work in seven days if it did not receive payment for Mr. Hine's supervisory fees.[47]

Contrary to the Arbitrator's determination that the situation surrounding the termination of the Contract was "murky,"[48] the events that followed Hine Builders' improper Stop Work Notice actually are quite clear. On January 20, 2016, Hine Builders' attorney sent a letter to the Dizengoffs expressing Hine Builders' desire to terminate the Contract.[49] At the same time, unbeknownst to the Dizengoffs, Hine Builders had removed all items related to the Project from the worksite, including pens, paper, tools, and building materials.[50] In addition, Hine Builders shut off the internet at the jobsite and had arranged for the on-site dumpster to be removed.[51] Indeed, Hine Builders effectively eliminated all signs that a contractor was working on the site at all. Already having concluded that the Stop Work Notice was a repudiation of the Contract, the Dizengoffs considered the letter and abandonment of the Project further evidence that Hine Builders did not intend to honor its obligations under the Contract.

Notwithstanding these clear facts, the Arbitrator failed to even address the Dizengoffs' argument that the Stop Work Notice, under Connecticut law, was a repudiation of the Contract, relieving the Dizengoffs of any further obligations to perform.[52] Instead, in his Award, the Arbitrator found, among other things, that the Dizengoffs had breached the Contract, and

---

[47] Qureshi Aff. Ex. G (Stop Work Notice).

[48] Qureshi Aff. Ex. A (Award at 6).

[49] Qureshi Aff. Ex. H (Termination Letter identified as Ex. 240 at the Hearing).

[50] Qureshi Aff. Ex. F (Tr. 167:12-15, 235:20-236:1) (Dec. 7, 2017); see also Qureshi Aff. Ex. P (Tr. 31:4-23) (Dec. 6, 2017).

[51] Qureshi Aff. Ex. F (Tr. 167:20-168:6, 236:8-9, 237:20-25) (Dec. 7, 2017).

[52] Qureshi Aff. Ex. A (Award).

therefore owed Hine over $100,000 for failure to provide seven days' notice of termination.[53]

The Arbitrator made this damages award despite the fact that Hine Builders failed to submit any

evidence supporting its expectation damages. Instead, the Arbitrator once again reversed the

burden and grounded his damages finding in the Dizengoffs' ability to disprove Hine Builders'

admittedly outdated "cost to complete" estimate.[54]

Additionally, the Arbitrator ignored the testimony of Mr. Lyons and Mr. Hine that Hine

Builders had removed items from the jobsite on January 20, 2016, which clearly demonstrates

that Hine Builders did, in fact, intend to repudiate the Contract by sending the Stop Work Notice

and then actually stopping work. For example, Mr. Lyons testified as follows:

> Q. When Hine Builders left the project on January 20, you took an inventory of
> everything that you took with you, right?
> A. There wasn't anything that I really took.
> Q. You didn't remove anything from the project?
> A. I didn't inventory anything. There wasn't anything. Everything that was there
> as material-wise stayed there on the project.
> Q. But you removed items from the project?
> A. I think vacuum cleaners.
> Q. But your testimony here is that you didn't make any inventory of the things
> you removed from the jobsite, right?
> A. I did not.
> Q. And to your knowledge, Hine Builders didn't make any inventory of what was
> removed from the jobsite, right?
> A. Generally we only have the tools that are in our van. We don't have a whole lot
> on the jobsite.
> Q. But regardless of what generally happens, you didn't make an inventory of
> what you took from the jobsite, right?
> A. No.[55]

And Mr. Hine testified as follows:

> Q. So is it your testimony, Mr. Hine, that at the time you left the job site, whatever
> the date was, that other than what was in your van that you referred to, that neither

---

[53] Qureshi Aff. Ex. A (Award).

[54] Qureshi Aff. Ex. A (Award at 16); see Qureshi Aff. Ex. F (Tr. 91:6-21) (Dec. 7, 2018) (no supporting documentation was ever provided in connection with the control estimate despite repeated requests by the Dizengoffs).

[55] Qureshi Aff. Ex. T (Tr. 168:19-169:21) (Jan. 18, 2018).

you nor anybody else from Hine Builders had removed any materials from the job site?

A. There would be no reason to take any materials.

Q. So there was no office that was set up that was effectively taken down and all the material in it removed? That never happened?

A. I think what I recall is that there was a folder table. It was our folding table and our printer. And I believe Larry took that with maybe his folders.[56]

Moreover, the Arbitrator declined to address Mr. Hine's unreasonable statement that he had no knowledge of the January 20 termination letter, sent by his attorney, seeking termination of the contract and demanding payment for denied supervisory fees, and that his lawyer might have "pressed send by accident."[57] For such a statement to be credible, let alone true, Hine Builders' attorney would have had to sign the letter "accidentally," send the letter to his assistant "accidentally," who then, in turn, would have had to send the letter to the Dizengoffs "accidentally." Even more incredibly, Mr. Hine was copied on this email and did nothing to communicate that he did not intend for the letter to be sent. Such a sequence of events defies logic, and any determination based thereon cannot be sustained. Finally, the "accidental" nature of this transmission is belied by the fact that Hine Builders, just five days earlier, sent a Stop Work notice.

## ARGUMENT

### I. THE AWARD SHOULD BE VACATED AS EXCEEDING THE ARBITRATOR'S POWER IN MANIFEST DISREGARD OF THE LAW

Although a "district court's review of an arbitration award is limited," *Sperry Int'l Trade, Inc. v. Gov't of Isr.*, 689 F.2d 301, 304 (2d Cir. 1982), "deference to arbitrators is not without its limits," *Jock v. Sterling Jewelers, Inc.*, 143 F. Supp. 3d 127, 133 (S.D.N.Y. 2015) (Rakoff, J.), *vacated on other grounds*, 2017 WL 3127243, at *2 (2d Cir. Jul. 24, 2017). "[A] ruling lacking

---

[56] Qureshi Aff. Ex. N (Tr. 461:18-462:10) (Jan. 19, 2018).

[57] Qureshi Aff. Ex. N (Tr. 624:3-12) (Jan. 19, 2018).

'barely colorable justification' in black-letter law or common sense" need not be "upheld purely because it issued from an arbitrator's pen." *Id.* at 134 (internal citation omitted); *see Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007) ("A decision of an arbitrator . . . is not totally impervious to judicial review").

The Federal Arbitration Act provides four statutory bases for vacating an arbitration award, at least one of which is implicated here: A court may enter "an order vacating the award upon the application of any party to the arbitration . . . where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). Interpreting this standard, the Second Circuit has recognized that an arbitrator exceeds his power when he manifestly disregards the law. *See, e.g.*, *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340 (2d Cir. 2010) ("[M]anifest disregard [of the law] [i]s a judicial gloss on the specific grounds for vacatur of arbitration awards under 9 U.S.C. § 10."); *see Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003). A court will vacate an award on the ground of "manifest disregard" if: (i) the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether; and (ii) the law ignored by the arbitrator was well-defined, explicit and clearly applicable to the case. *DiRussa* v. *Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997).

"In determining an arbitrator's awareness of the law," the first prong of the test, the court "will *infer* knowledge and intentionality on the part of the arbitrator" where the court identifies "an error that is so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator." *Duferco*, 333 F.3d at 390 (emphasis added); *see also Capo* v. *Bowers*, 2001 WL 36193449, at *4 (S.D.N.Y. Mar. 12, 2001) (vacating arbitration award). Manifest disregard "is not confined to that rare case in which the arbitrator provides . . . explicit acknowledgment of wrongful conduct." *Westerbeke Corp.* v. *Daihatsu Motor Co., Ltd.*, 304 F.3d

17

200, 218 (2d Cir. 2002); *see also Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2d Cir. 1998) ("[W]e doubt whether even under a strict construction of the meaning of manifest disregard, it is necessary for arbitrators to state that they are deliberately ignoring the law."). Courts find that an arbitrator was aware of the law when the parties to the arbitration identify the law to the arbitrator. *Duferco*, 333 F.3d at 390. Additionally, an arbitrator's failure to explain his reasoning "may reinforce the reviewing court's confidence that the arbitrators engaged in manifest disregard." *Id.* ("[W]here a reviewing court is inclined to find that arbitrators manifestly disregarded the law or the evidence and that an explanation, if given, would have strained credulity, the absence of explanation may reinforce the reviewing court's confidence that the arbitrators engaged in manifest disregard.").

To satisfy the second prong of the test, a party must show that the law ignored by the arbitrator was clear and applicable to the matter at issue. *See id.* at 390; *Westerbeke*, 304 F.3d at 209. Here, the Arbitrator manifestly disregarded settled law by: (i) not only ignoring, but functionally reversing the burden of proof such that the Dizengoffs had to disprove Respondent's damages counterclaim despite Respondent's admission that it had "no evidence" to offer in support of its counterclaim, and (ii) improperly ignoring Respondent's Stop Work Notice as an anticipatory breach and repudiation that excused the Dizengoffs' notice requirement under the Contract.

## A. The Arbitrator, in Manifest Disregard of the Law, Ignored Longstanding Precedent that a Party Must Prove Its Own Damages

Hine Builders, in its counterclaim, alleges that the Dizengoffs breached the Contract by failing to pay Applications for Payment 12 and 13.[58] On account of its counterclaim, Hine

---

[58] Qureshi Aff. Ex. J (Hine Builders' Response & Counterclaim at 19-21).

Builders was awarded $159,844.24.[59] Applications 12 and 13 included not only charges for Mr. Hine's supervisory fees, but also charges for payments Hine Builders alleged it owed or had already paid to subcontractors.[60]

Connecticut law, which governs the Contract, clearly provides that the party asserting a breach of contract, whether as an affirmative claim or a counterclaim, bears the burden of proof related to its material allegations and damages. *See, e.g., VS Int'l SA v. Boyden World Corp.*, 862 F. Supp. 1188, 1195 (S.D.N.Y. 1994); *Premco Drilling Inc. v. Maillet Bros. Builders, Inc.*, 218 A.2d 542 (Conn. Cir. Ct. 1965) (finding burden was upon defendant to prove its counterclaims); *Whitaker v. Amato*, 1998 WL 150753, at *7 (Conn. Super. Ct. Feb. 24, 1998) ("To recover compensatory damages, the defendant had the further burden of proving the nature and extent of the damage proximately caused by the plaintiffs' [breach of duty] and the reasonable amount of the losses resulting therefrom. . . . If the defendant was not prepared to bear the burden of proof on each element of his counterclaim, including damages, he should not have pursued it at the time of trial."); *see also Stanton v. N. Y. & E. Ry. Co.*, 22 A. 300, 303-04 (Conn. 1890); 3 Restatement (Second) of Contracts § 346 (1981) (in order to receive anything other than nominal damages, party must prove both that breach of contract "caused" loss and amount of loss). It is thus "incumbent on the party asserting either direct or consequential damages to provide sufficient evidence to prove such damages." *Sullivan v. Thorndike*, 934 A.2d 827, 833 (Conn. App. Ct. 2007); *see Frillici v. Westport*, 823 A.2d 1172, 1183 (Conn. 2003). Further, "[w]hen damages are claimed[,] they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty."

---

[59] Qureshi Aff. Ex. A (Award at 18).

[60] Qureshi Aff. Ex. R (Application for Payment 12); Qureshi Aff. Ex. S (Application for Payment 13 identified as Ex. 227 at the Hearing).

*Carrano v. Yale–New Haven Hosp.*, 904 A.2d 149, 167 (Conn. 2006) (internal quotation marks omitted).

The law on burden of proof is well-settled and free from ambiguity. Accordingly, the next inquiry is whether the Arbitrator was aware of this governing legal principle. Despite the obvious and central nature of the burden of proof to any attorney acting as an arbitrator, the Dizengoffs repeatedly reminded the Arbitrator that it was Hine Builders' burden to prove its damages. The Dizengoffs' post-hearing brief made this abundantly clear: "Hine [Builders] has failed to carry its burden to prove that the Dizengoffs breached any provision of the Contract" and has "failed to submit any evidence of its damages claim, instead relying on what Mr. Hine repeatedly testified was an 'estimate' to calculate its damages."[61] "In determining an arbitrator's awareness of the law, we impute only knowledge of governing law identified by the parties to the arbitration." *Duferco*, 333 F.3d at 390. Here, there is no dispute that the Arbitrator was aware of this governing legal principle. As such, the Arbitrator not only ignored this most basic of legal principles, but also took the extraordinary step of reopening the record after the Hearing had concluded to effectively reverse the burden of proof by requiring the Dizengoffs to disprove Hine Builders' claim that subcontractors had gone unpaid.

During the Hearing, Respondent failed to offer any documentary evidence whatsoever— whether emails or other written demands from subcontractors seeking payment, or any accounting records or canceled checks demonstrating that Hine Builders had in fact paid the subcontractors and not been reimbursed.[62] In fact, when asked on cross-examination what

---

[61] Qureshi Aff. Ex. D (Dizengoffs' Post-Hr'g Br. at 6).

[62] *See* Qureshi Aff. Ex. O (Hine Builders' Email re Subs identified as Ex. 278 at the Hearing) ("owners are not obligated to pay anything until they have the lien waiver's or proof of payment from previous apps [if they asked for proof – which they did].").

20

evidence was being offered in support of the counterclaim for damages arising from allegedly

unpaid subcontractors, Mr. Hine testified that he had "no evidence" to offer:

> Q. And my current question concerns subcontractors. And you agree with me, sir, that in your total amount that you claim is due and owing in the aggregate for applications 12 and 13, which is $193,000 and change, that a component of that constitutes invoices from subcontractors for time and material that is contained necessitated these two applications for payment; correct?
> A. Yes.
> Q. As you sit here today, am I correct that you have no evidence to offer to any of those subcontractors that have invoices and applications 12 or 13 have not been paid?
> A. I have no evidence of that.[63]

Not only did Respondent fail to offer *any* evidence in support of this counterclaim, but the

Dizengoffs testified that all subcontractors on Applications 12 and 13 had been paid. As

explained by Ms. Dizengoff:

> Q. Is it fair to say within a week of January 20th, of Hine Builders no longer working on the job --
> A. Yes.
> Q. -- that you and your husband made efforts to pay --
> A. Yes.
> Q. -- existing balances to subcontractors?
> A. Yes. Yes.[64]
>
> Q. To your knowledge, Ms. Dizengoff, after Hine's departure from the job, are there any subcontractors who have not been paid for work that was performed or materials that were purchased that are contained in applications for payment 12 or 13?
> A. All subcontractors were paid.[65]

Despite the strong testimonial evidence (with no competing evidence submitted by

Respondent) that all subcontractors listed in Applications 12 and 13 had been paid, after the

Hearing was closed and post-hearing briefs submitted, the Arbitrator unilaterally re-opened the

Hearing:

---

[63] Qureshi Aff. Ex. N (Tr. 492:9-24) (Jan. 19, 2018).

[64] Qureshi Aff. Ex. F (Tr. 253:1-8) (Dec. 7, 2017).

[65] Qureshi Aff. Ex. N (Tr. 570:19-25) (Jan. 19, 2018).

21

"...on my initiative as arbitrator, the hearings have been reopened for the purpose of having the parties confer regarding those payments made by the Owner directly to any subcontractor or materials supplier of the Respondent for work or materials billed in payment applications 12 and 13.[66]

In response to this demand from the Arbitrator, the Dizengoffs reiterated, in writing to the Arbitrator, that Hine Builders "has failed to produce any evidence or documentation satisfying *its* burden of proof that it is entitled to such damages."[67] In the same writing, the Dizengoffs also noted that Hine Builders failed to adequately investigate its claim for damages (which included monies *not* owed to subcontractors) before requesting that relief, thereby "knowingly submitting a false and misleading claim for damages."[68] Despite voicing these concerns, the Dizengoffs had no choice but to comply with the Arbitrator's demand and provided evidence of payments made to subcontractors.[69] Hine Builders, on the other hand, offered zero evidence to support Respondent's claim that it was owed amounts for work performed by the subcontractors in Applications 12 and 13.

The Arbitrator's blatant disregard of the well-established law that a party has the burden to prove its own damages, and requirement that the Dizengoffs instead submit evidence to disprove Respondent's claim for damages, is grounds for vacatur. Moreover, if the Arbitrator's Award remains intact, Hine Builders would receive an unconscionable windfall because the Dizengoffs would be forced to pay Hine Builders for work that was completed by subcontractors *that the Dizengoffs had already paid directly to those subcontractors. See Ambrogio v. Beaver Rd. Assocs.*, 836 A.2d 1183, 1187 (Conn. 2003) ("The general rule in breach of contract cases is that the award of damages is designed to place the injured party . . . in the same position as that

---

[66] Qureshi Aff. Ex. K (Email from Arbitrator Reopening Case).

[67] Qureshi Aff. Ex. L (Dizengoffs' Email to Arbitrator attaching Proof of Pmt) (emphasis in original).

[68] Qureshi Aff. Ex. L (Dizengoffs' Email to Arbitrator attaching Proof of Pmt). The Dizengoffs' attorney further raised this point with the Arbitrator during a joint conference.

[69] Qureshi Aff. Ex. L (Dizengoffs' Email to Arbitrator attaching Proof of Pmt).

which he would have been in had the contract been performed.") (internal quotations omitted); *see also Wells v. Dicesare-Bentley Eng'rs, Inc.*, 2000 WL 1434047, at *1 (Conn. Super. Ct. Sept. 15, 2000). In the alternative, the Court should modify the Award to deny any damages to Hine Builders on account of subcontractor invoices in Applications 12 and 13 because Hine Builders failed to offer "any evidence" to substantiate this counterclaim.

Similarly, Hine Builders also alleged in its counterclaim that it was owed "reasonable overhead and profit on the Work not executed" (i.e., expectation damages) in connection with termination of the Contract.[70] On account of its counterclaim, Hine Builders was awarded $107,881.38, which represents its fee of 16% of the cost to complete the Project following the date of termination. Once again, however, Hine Builders failed to provide any evidence to substantiate such damages. Specifically, in order to support its claim, Respondent was obligated to offer evidence of the cost to complete the Project following the date of Hine Builders' termination. Instead, Hine Builders offered nothing more than an estimate that the Arbitrator found to be outdated and inaccurate.[71] The Dizengoffs clearly articulated this argument in their post-hearing brief:

> Hine [Builders] cannot recover overhead and profit for items that were excluded from the scope of the Project. The Contract required Hine to 'update the Control Estimate with each Application as needed to reflect changes in Work.' Specifically, Hine [Builders] was required—but failed—to remove from the Control Estimate, as defined in the Contract, tasks that were excluded from the scope of work, included within other task lines, or not properly updated by Hine [Builders] to reflect the subcontractors' contracted amounts.[72]

Again reversing the burden of proof, the Arbitrator placed the onus on the Dizengoffs to *disprove* that Hine Builders was entitled to expectation damages and ultimately reduced Hine

---

[70] Qureshi Aff. Ex. J (Hine Responses & Counterclaim at 19-20).

[71] Qureshi Aff. Ex. A (Award at 16) ("According to the evidence presented, the Control Estimate was not adjusted periodically as required by Contract.").

[72] Qureshi Aff. Ex. D (Dizengoffs' Post-Hr'g Br. at 6-7) (citing Ex. B [AIA 103 § 5.2.1, 5.2.3]; Ex. N [Tr. 373:19-25 (Jan. 19, 2018)]; Ex. E [Tr. 196:8-197:1 (Dec. 5, 2017)]; Ex. P [Tr. 269:25-271:16 (Dec. 6, 2017)]).

Builders' estimated cost to complete the Project—i.e., its claimed "expectation damages."[73] Instead, the Arbitrator should have required Hine Builders to satisfy its burden by proving the remaining cost to complete the Project. Having reversed the burden of proof, it would be unconscionable to award Hine Builders a 16% fee.

For the foregoing reasons, the Award should be vacated or, in the alternative, modified to deny any damages to Hine Builders related to subcontractor invoices in Applications 12 and 13 and the expectation damages because Hine Builders failed to offer any evidence to substantiate its counterclaim.

## B. The Arbitrator Ignored Established Precedent that a Party Is Not Obligated to Continue Performing under a Contract Once the Other Party Repudiates

The Arbitrator also ignored established precedent that an anticipatory breach by one party excuses the other party from performing under the contract. Connecticut law is clear. An "[a]nticipatory breach of contract occurs when a party communicates a definite and unequivocal manifestation of intent not to render the promised performance." *Andy's Oil Serv., Inc. v. Hobbs*, 9 A.3d 433, 442 (Conn. App. Ct. 2010). Indeed, it is axiomatic that "an anticipatory breach discharges any remaining duties of the nonbreaching party, and [that] once there has been a repudiation that party is no longer required to hold himself ready, willing and able to perform." *Coppola Constr. Co. v. Hoffman Enters. Ltd. P'ship*, 117 A.3d 876, 893-94 (Conn. App. Ct. 2015) (quotation omitted). In other words, the effect of an anticipatory breach of contract "is to allow the nonbreaching party to discharge his remaining duties of performance." *Cottman Transmission Sys., Inc. v. Hocap Corp.*, 803 A.2d 402, 407 (Conn. App. Ct. 2002). Myriad sources underscore this basic legal principle. *See, e.g., Powell v. Spot-On Networks, LLC*, 2006 WL 860108, at *3 (D. Conn. Mar. 31, 2006) ("An anticipatory breach of contract . . . permits the

---

[73] Qureshi Aff. Ex. A (Award at 17).

24

non-breaching party to disregard its remaining duties of performance . . ."); *Tolland Enters. v. Scan-Code, Inc.*, 684 A.2d 1150, 1154 n.11 (Conn. 1996) ("an anticipatory breach of a contract generally excuses the nonbreaching party from further performance under the contract"); *McKenna v. Woods*, 574 A.2d 836, 838 (Conn. App. Ct. 1990) (the effect of an anticipatory breach of contract "is to allow the nonbreaching party to discharge his remaining duties of performance"); Restatement (Second) of Contracts § 253(2) (1981) ("Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance."); *see also Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1008 (2d Cir. 1991) (holding that, because subcontractor abandoned project, it would have been "useless gesture" and "futile act" to require contractor to strictly adhere to two-day notice provision prior to terminating contract).

It is also indisputable that "[r]epudiation can occur either by a statement that the promisor will not perform or by a voluntary, affirmative act that indicates inability . . . to perform." *Gilman v. Pedersen*, 438 A.2d 780, 781 (Conn. 1981); *see also Coppola Constr. Co.*, 117 A.3d at 893 (A repudiation . . . may be by words or other conduct.") (emphasis in original) (quotation omitted); *Pullman, Comley, Bradley & Reeves v. Tuck-it-away, Bridgeport, Inc.*, 611 A.2d 435, 438 (Conn. App. Ct. 1992) ("The manifestation of intent not to render the agreed upon performance may be either verbal or nonverbal"); 5 Bruner & O'Connor Construction Law § 18:23 ("Anticipatory repudiation . . . [may be] conveyed by (1) word [or] (2) conduct."). When language indicating a party's intent to not perform is accompanied by actions that amount to a breach by non-performance, the combination may amount to repudiation even if, standing alone,

either the language or the actions might not have been sufficient to constitute repudiation. *See*

Restatement (Second) of Contracts § 250 cmt. b.

Further, the Arbitrator was aware of this law because it was laid out in detail in both the

pre- and post-hearing briefs submitted by the Dizengoffs, supporting evidence developed through

multiple witnesses who testified at the Hearing, and documents submitted into evidence.

Specifically, Hine Builders' January 15, 2016 Stop Work Notice, which was entered into

evidence and discussed during the Hearing, provided that:

> We [Hine Builders] are required to give a seven day notice that we will be
> stopping work on the project located at 3 Landmark Drive, Bridgewater, CT
> 06752, until payment of all invoiced Supervisory Fees owed have been received.
> This letter services as notice. This stop work notice will be effective seven (7)
> days from January 15, 2016 and the last day on the job site being January 22,
> 2016 at the end of the work day.[74]

The Dizengoffs' pre-hearing brief clearly articulated a legal position with respect to the Stop

Work Notice:

> Instead of complying with the Contract's dispute resolution procedures, Hine
> Builders sent a "stop work" notice on January 15, 2016, alerting the Dizengoffs
> that it would be stopping work because Mr. Hine had not received his Supervisory
> Fees (the "Stop Work Notice"). *By so doing, Hine Builders breached the
> Contract because it was contractually obligated to continue working while the
> dispute over the [Applications] for Payment was ongoing and thus had no right
> to stop working.*[75]

The Arbitrator ignored this argument entirely. Instead, the Arbitrator only considered, and

rejected, evidence regarding whether Hine Builders "abandoned the Project."[76] The Arbitrator

did not address—implicitly or explicitly—the argument that the Dizengoffs raised in their

briefing that issuance of the Stop Work Notice, which was a clear breach of the Contract,

---

[74] Qureshi Aff. Ex. G (Stop Work Notice).

[75] Qureshi Aff. Ex. Q (Dizengoffs' Pre-Hr'g Br. at 5-6) (emphasis added).

[76] *See generally* Qureshi Aff. Ex. A (Award).

amounted to repudiation.[77] The Arbitrator also referred to the letter Respondent's counsel sent to the Dizengoffs on January 20, 2016 that "restated the Respondent's protest about the Owners' refusal to pay all of the billing submitted by the Respondent for Project supervision," a letter which stated:

> For this non-payment, Hine Builders LLC considers the non-payment just cause for termination under Article 14.1.2 and has given you notice of its *intent to stop work*.

> In addition, we understand the level of trust and ability to work out issues between the Contractor and Owners have deteriorated to a point where there is no upside to either party continuing this Project together...Please have your counsel contact the undersigned so we can discuss an *orderly termination of the Contract* and dispute resolution proceedings...[78]

Accordingly, in light of well-established Connecticut law on repudiation, which was brought repeatedly to the Arbitrator's attention but completely ignored, the Award should be vacated in its entirety. Alternatively, the Award should be reduced by $107,818.38 to reflect the amount the Arbitrator awarded as a result of his utter disregard for established law, which made clear that the Dizengoffs were not required to continue performing under the Contract—i.e., they did not have to provide a seven-day notice of intent to terminate—after Hine Builders breached the Contract.

## II. THE ARBITRATION WAS FUNDAMENTALLY UNFAIR BECAUSE THE ARBITRATOR EFFECTIVELY EXCLUDED THE DIZENGOFFS' EVIDENCE

Not only did the Arbitrator manifestly disregard the law, but he reached a fundamentally unfair result because he refused to consider evidence pertinent and material to the Arbitration. Section 10(a)(3) of the FAA provides that an award may be vacated "where the arbitrator[ is] guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or

---

[77] *See generally* Qureshi Aff. Ex. A (Award).

[78] Qureshi Aff. Ex. A (Award at 6-7) (citing Ex. H [Termination Letter]) (emphasis added).

of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. §
10(a)(3). The Second Circuit has applied this section to review and vacate arbitration awards
"where fundamental fairness is violated," *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d
Cir. 1997), including where the arbitrator improperly excluded evidence. *See, e.g., id.* at 16;
*Teamsters, Chauffers, Warehousemen & Helpers, Local Union No. 506 v. E.D. Clapp Corp.*, 551
F. Supp. 570 (N.D.N.Y. 1982); *Cofinco, Inc. v. Bakrie & Bros., N.V.*, 395 F. Supp. 613 (S.D.N.Y.
1975). Awards thus may be vacated for an arbitrator's "refusal to give any weight to the
evidence at hearing." *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F. 2d 34,
42 (1st Cir. 1985). Additionally, an award may be vacated where it is incomplete and
ambiguous. *Bell Aerospace Co. v. Local 516, Int'l Union, UAW*, 500 F.2d 921, 923 (2d Cir.
1974) ("Courts will not enforce an award that is incomplete, ambiguous, or contradictory."). 
Here, despite the 18-page ruling, it is unclear how the Arbitrator arrived at his damages
calculation.

  First, the Arbitrator, before taking into account Respondent's stipulation, reduced Hine
Builders' claim for work already performed from $193,597.72 to $110,405.93.[79] Both the
Arbitrator's rationale and calculations are entirely opaque. It appears that he credited the
Dizengoffs only for certain (out of many) remedial items that were performed after Hine
Builders terminated the Contract: (i) recessed lighting ($4,364.82); (ii) drain hookups
($2,273.28); and (iii) drywall work ($1,934.00), for a total reduction of $8,542.10. The source of
the other deductions, totaling $65,928.16, remains unclear. Even if the Arbitrator also intended
to reduce the Award by (x) the amount Hine Builders overbilled for Mr. Hine's supervisory fees
($21,125.47 and $2,823.00), (y) the cabinets deposit ($31,226.93), and (z) the overpayment

---

[79] Qureshi Aff. Ex. A (Award at 14).

credit ($3,487.25)—which it is unclear that he did—an almost $7,500.00 discrepancy remains.[80] It is impossible to determine how the Arbitrator calculated the Award.

After the Arbitrator reopened the case and requested that the Dizengoffs submit additional evidence to disprove Hine Builders' unfounded claims for damages, the Arbitrator then ignored key pieces of evidence of proof of payments by the Dizengoffs to the subcontractors. In doing so, the Arbitrator issued an Award containing damages that not only failed to account for certain critical pieces of evidence of proof of payment (while recognizing other similar proofs of payment and deducting them from Hine Builders' final award), but also that were untethered from reasonable or ascertainable calculations.[81]

The ambiguous nature of the Arbitrator's Award is demonstrated by the following compelling example: The Arbitrator allowed an offset for the Dizengoffs' proof of payment to Century Woodworking, the cabinet subcontractor, in the amount of $31,266.93, but chose to ignore a similar proof of payment to New England Stair Company, the stair subcontractor, in the amount of $21,933.15.[82] Both of these payments were deposits the Dizengoffs paid to subcontractors for work that was never performed (indeed, both subcontractors refused to return to finish the job after Hine Builders abandoned the Project). The Arbitrator recognized that the Dizengoffs paid the cabinet subcontractor for materials that were never delivered, but then—for no apparent reason—declined to even mention the fact that the Dizengoffs had also paid a deposit to the stair subcontractor for materials that were never delivered (and offered evidence to prove this). This decision, on its face, seems contradictory. Moreover, the Arbitrator's damages

---

[80] Qureshi Aff. Ex. A (Award).

[81] *See* Qureshi Aff. Ex. A (Award).

[82] *Id.*; Qureshi Aff. Ex. L (Dizengoffs' Email to Arbitrator attaching Proof of Pmt).

calculation is so impenetrable that it would be impossible to determine how he came to this conclusion even if a rational reason existed.

Finally, the Arbitrator failed to address a number of the Dizengoffs' claims that Hine Builders attempted to charge the Dizengoffs for items that were expressly excluded from the Contract, including Hine Builders' liability insurance—something the Dizengoffs were under no obligation to pay for under the Contract.[83] The Dizengoffs raised this point both at the Hearing and in their post-hearing brief.[84] Further, Hine Builders failed to contest this point during the Hearing or in its reply brief. Nevertheless, the Arbitrator declined (or forgot) to exclude this amount, which was clearly not to be reimbursed, from the Award. As with the proof of payment calculations, there was no logical reason for the Arbitrator to award Hine Builders an amount that included the liability insurance that the Contract made clear Hine Builders was obligated to pay. And even if such a reason existed, the Arbitrator's Award is so lacking in clarity that no reasonable person could ascertain his reasoning.

The Arbitrator's blatant disregard of this evidence and numerous other facts in the record amount to an effective exclusion of critical evidence favorable to the Dizengoffs and a failure by the Arbitrator "to execute his duty to evaluate the proof submitted by the parties during the arbitration hearing." *Hoteles*, 763 F.2d at 37. Vacatur is proper in these circumstances because the Arbitrator effectively excluded evidence that was "central and decisive to the [Dizengoffs'] position." *Id.* at 37, 40. Such misconduct ultimately deprived the Dizengoffs of a full and fair hearing and resulted in a fundamentally unfair award. *See id.* (vacating award that effectively excluded evidence); *Konkar Maritime Enters. v. Compagnie Belge D'Affretement*, 668 F. Supp. 267, 271 (S.D.N.Y. 1987) (vacating award not premised on a "full and fair" hearing on the

---

[83] Qureshi Aff. Ex. C (AIA 201 §§ 11.1.1, 11.1.5).

[84] Qureshi Aff. Ex. N (Tr. 340:25-343:24) (Jan. 19, 2018); Qureshi Aff. Ex. D (Dizengoffs' Post-Hr'g Br. at 9).

merits). In view of the foregoing, the Award should be set aside. Alternatively, the Award must be reduced by a total of at least $27,413.30, the amount of the mischarged liability insurance ($5,480.15) and stair deposit ($21,933.15).

### III. THE ARBITRATOR ERRED IN AWARDING HINE BUILDERS ATTORNEY'S FEES WITHOUT AFFORDING THE DIZENGOFFS THE OPPORTUNITY TO OBJECT TO UNREASONABLE FEES

Instead of allowing the Dizengoffs the opportunity to review Respondent's invoices submitted in support of its request for attorney's fees, the Arbitrator awarded attorney's fees to Respondent based on an improper *in camera* review. In so doing, the Arbitrator stripped the Dizengoffs of any ability to object to the reasonableness of the fees.

#### A. The History of the Legal Fees Dispute

On March 22, 2018, Respondent submitted its Affidavit in Support of Legal Fees (the "Greenblatt Fee Affidavit").[85] On May 4, 2018, the Dizengoffs submitted an objection to the Greenblatt Fee Affidavit and requested that the Arbitrator require Respondent to produce copies of its attorney fee bills so that the Dizengoffs could review them for reasonableness and relevance.[86] Respondent responded to the Dizengoffs' objection, and the Dizengoffs replied. After the Arbitrator twice ordered (on May 11 and 17) Respondent to provide copies of its legal bills in support of its request for attorney's fees, on May 23, 2018, Respondent submitted an entirely new affidavit, adding additional attorney's fees, costs and expenses that were not included in its first fee affidavit (the "Gramarossa First Fee Affidavit")[87] and attaching entirely redacted legal bills, claiming that it redacted all narratives because Respondent was "of the

---

[85] Qureshi Aff. Ex. Z (Ex. 1 to Dizengoffs' Supplemental Objection to Respondent's Request for Attorney's Fees (Greenblatt Fee Affidavit)).

[86] Qureshi Aff. Ex. Z (Ex. 2 to Dizengoffs' Supplemental Objection to Respondent's Request for Attorney's Fees (Dizengoffs' Objection to Greenblatt Fee Affidavit)).

[87] Qureshi Aff. Ex. Z (Ex. 3 to Dizengoffs' Supplemental Objection to Respondent's Request for Attorney's Fees (Gramarossa First Fee Affidavit with attached invoices)).

opinion that the redacted descriptions included with each of its invoices are confidential communications between attorney and client regarding the legal representation of the client."[88] After the Arbitrator rejected Respondent's submission of the Gramarossa First Fee Affidavit with completely redacted legal bills,[89] Respondent, instead of complying with the Arbitrator's requests, submitted an identical declaration attaching identical invoices with identical redactions of all narratives that would allow the Dizengoffs to review and assess any relevant information, namely whether the time expended and the tasks performed were reasonable.[90] After the Dizengoffs once again objected, the Arbitrator, instead of requiring Respondent to comply with his order, issued an award of attorney's fees in his Final Award.

Like the Partial Findings Award, the Final Award is opaque as to the reasoning that underlies the result. The Dizengoffs raised various objections based on their review of the redacted invoices, including objecting to all fees incurred by Respondent's counsel during a four-month discovery dispute spurred by Respondent's baseless objection to provide relevant documents. Instead of articulating how he reached the final award of attorney's fees, the Arbitrator simply stated that he "excluded certain billing entries" related to the discovery dispute and did not address other of the Dizengoffs' objections whatsoever (i.e., how much of the attorney's fees were related to litigation unrelated to the arbitration or how much he reduced Respondent's request because of arbitration costs and expenses).

---

[88] Qureshi Aff. Ex. Z (Ex. 7 to Dizengoffs' Supplemental Objection to Respondent's Request for Attorney's Fees (Respondent's Response)).

[89] Qureshi Aff. Ex. Z (Ex. 4 to Dizengoffs' Supplemental Objection to Respondent's Request for Attorney's Fees (Arbitrator's Rejection)).

[90] Qureshi Aff. Ex. Z (Ex. 5 to Dizengoffs' Supplemental Objection to Respondent's Request for Attorney's Fees (Gramarossa Section Fee Affidavit with attached invoices)).

## B. The Arbitrator Erred by Not Allowing the Dizengoffs the Opportunity to Review Unredacted Legal Bills

As raised in several of the Dizengoffs' objections to Respondent's request for attorney's fees, narratives in attorney invoices are not automatically deemed privileged communications.[91] Legal invoices can only be redacted if they contain privileged attorney-client communications. *See Fisher v. United States*, 425 U.S. 391, 403 (1976) ("[S]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege."); *State v. Cascone*, 487 A.2d 186 (Conn. 1985) (finding that privilege protected only communications between client and attorney when made in confidence for the purpose of seeking or giving legal advice); *Ullman v. State*, 647 A.2d 324, 332 (Conn. 1994) ("Not every communication between attorney and client falls within the privilege. A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be inextricably linked to the giving of legal advice."). Notwithstanding this clear precedent, the Arbitrator caved to Respondent's persistent non-compliance and reviewed the unredacted invoices *in camera* rather than requiring Respondent to submit unredacted legal bills.

*In camera* review generally is disfavored. *See Nationwide Payment Solutions, LLC v. James Plunkett*, 831 F. Supp. 2d 337, 339 (D. Me. 2011); *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 252-53 (D.C. Cir. 1993). It is a fundamental tenet of fairness that if a party seeks attorney's fees, the party must permit its opponent to review the unredacted version so that the opposing party can object as to the reasonableness of the fee request. *See, e.g., Ideal Elec. Sec. Co., Inc. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997) (finding that the plaintiff was "entitled to

---

[91] Qureshi Aff. Ex. Z (Dizengoffs' Supplemental Objection to Respondent's Request for Attorney's Fees).

33

discover the [attorney's invoices] to appraise the reasonableness of the amount of fees requested

by [the defendant], including the nature and extent of the work done by [the defendant's] counsel

on various phases of the case, so that it [could] present to the court any legitimate challenges to

[the defendant's] claim [for attorney's fees]); *Equitable Prod. Co. v. Elk Run Coal Co.*, No. 2:08-

cv-00076, 2008 WL 5263735, at *6 (S.D. W. Va. Oct. 3, 2008) ("Simply put, a party may not

attempt to recover damages for a particular type of loss and then refuse to produce the evidence

of that alleged loss for thorough examination and testing by the opposing party."); *Wasniewski v.*

*Grzelak-Johannsen*, 549 F. Supp. 2d 965, 975 (N.D. Ohio 2008) ("The alternative of *in camera*

review of an unredacted [attorney billing] statement is . . . unattractive because it interjects an

element of *ex parte* review in this matter and deprives respondent of an opportunity to raise

arguments."); *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 2007 WL 700851, at *2 (M.D. Fla.

Mar. 1, 2007) (finding it "manifestly unfair to opponent to require it to defend against the

sizeable fee award claimed by [the fee- claimant] without the benefit of the full record upon

which the fees are based").

  Put differently, "a claimant who seeks attorney's fees and submits attorney fee invoices in

support of that request can be said to have impliedly waived any applicable privilege or

protection, at least as to its opponent and as to the invoices themselves." *Nationwide Payment*

*Solutions*, 831 F. Supp. 2d at 339 (citing *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 2011 WL

2214765, at *20 (E.D. La. June 1, 2011); *Pillsbury Winthrop Shaw Pittman LLP v. Brown Sims,*

*P.C.*, 2010 WL 56045, at *5-7 (S.D. Tex. Jan. 6, 2010); *Aecon Buildings, Inc. v. Zurich N. Am.*,

2008 WL 2434205, at *1-2 (W.D. Wash. June 13, 2008)).

  The Arbitrator twice ordered Respondent to submit properly redacted invoices so that the

Dizengoffs could review and object. Respondent refused to comply, and yet the Arbitrator

entered the Final Award without allowing the Dizengoffs to review and object to the non-privileged portions of the attorney's fees invoices. In awarding attorney's fees without affording the Dizengoffs an opportunity to review the legal invoices and object to any unreasonable entries—including time spent on matters unrelated to the Arbitration, excessive or duplicative time spent on certain tasks, time spent disputing discovery requests the Arbitrator found to be unreasonable, and any other objections that the Dizengoffs could have made if they had not been deprived of their right to review unredacted legal bills—the Arbitrator demonstrated a manifest disregard of the law.

## CONCLUSION

For the foregoing reasons, the Dizengoffs respectfully request that their Motion to Vacate the Arbitration Award be granted or in the alternative that the Award be modified to reflect the actual evidence submitted. Furthermore, if the Court grants a modification in the damages award, the Dizengoffs request that it also grant a modification decreasing the Arbitrator's attorney's fees award commensurate with the reduction of the Award.

Dated: June 5, 2018
Milford, Connecticut

Respectfully submitted,

BERCHEM MOSES PC

/s/ Richard J. Buturla
Richard J. Buturla (#ct05967)
75 Broad Street
Milford, CT 06460
(203) 783-1200
(203) 878-4912 (fax)
rbuturla@berchemmoses.com

AKIN GUMP STRAUSS HAUER & FELD LLP

Abid Qureshi (*pro hac vice* admission pending)
One Bryant Park
New York, NY 10036
(212) 872-1000
(212) 872-1002 (fax)

*Attorneys for Petitioners Ira and Betsy Dizengoff*